UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUSTAVO MORAN,

                         Plaintiff,

    -v-                                      No. 15-cv-08570 (RJS)
                                                  OPINION AND ORDER

TRYAX REALTY MANAGEMENT, INC.
and MICHAEL SCHMELZER,

                         Defendants.

RICHARD J. SULLIVAN, District Judge:

       Plaintiff Gustavo Moran ("Plaintiff") brings claims for unpaid wages pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Doc. No. 1 ("Compl.")). In their Amended Answer, filed on January 4, 2016, Defendants set forth sixteen affirmative defenses and bring four counterclaims against Plaintiff for breach of the duty of loyalty, breach of fiduciary duty, fraud, and unjust enrichment. (Doc. Nos. 15, 16 ("Am. Ans.")). Now before the Court is Plaintiff's motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6) to dismiss the four counterclaims and Defendants' motion for leave to amend their Answer a second time to add a seventeenth affirmative defense. For the reasons set forth, the Court (1) grants Plaintiff's motion to dismiss Defendants' counterclaims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction; (2) denies Plaintiff's motion to dismiss pursuant to Rule 12(b)(6) as moot; and (3) grants Defendants' motion for leave to amend their answer to add a seventeenth affirmative defense.

I. BACKGROUND

A. Facts

Plaintiff alleges that he was employed as a property manager by Defendant Tryax Realty Management, Inc. ("Tryax"), a real estate company that owns or manages several buildings in New York City, and its owner, Defendant Michael Schmelzer, from May 2011 to August 2015. (Compl. ¶¶ 9, 15–16, 18; *see also* Am. Ans. ¶ 3)[1] Plaintiff alleges that he worked at least 50-54 hours per week and was not paid overtime wages as required by the FLSA and NYLL. (Compl. ¶¶ 1–3, 20.)

For their part, Defendants assert a variety of counterclaims alleging numerous instances of misconduct by Plaintiff in his capacity as a property manager. Defendants contend that superintendents at buildings owned or managed by Tryax were expected to independently perform certain repairs at the buildings under their supervision. (Am. Ans. ¶ 6.) After determining the costs of such repairs, superintendents were to submit an invoice to Tryax for reimbursement. (*Id.* ¶ 7.) Plaintiff, as a property manager, was then required to inspect the repairs and to review and approve the invoices. (*Id.* at ¶ 8.) Defendants aver that Plaintiff demanded that various superintendents "falsify and inflate invoices" and perform unnecessary work on "dozens of occasions"; that Plaintiff approved these misleading invoices; that Defendants remitted payment in reliance on these misleading invoices; and that Plaintiff demanded that the superintendents, in turn, remit to him the amount of the overcharge. (*Id.* at ¶¶ 9–14, 20–23, 29–33, 41–44, 61–64, 72, 79, 82–84, 88–89.) In addition, Defendants allege that Plaintiff required superintendents to pay him kickbacks in order to obtain more desirable work assignments (*id.* ¶¶ 19, 39, 54), that Plaintiff solicited and received kickbacks from tenants in exchange for allowing them to use their

---

[1] The following facts are taken from the Complaint, filed on October 30, 2015 (Doc. No. 1 ("Compl.")) and from Defendants' First Amended Answer (Doc. Nos. 15, 16 ("Am. Ans.")), which was filed on January 4, 2016. In ruling on the motion to dismiss, the Court has also considered Plaintiff's letter in support of dismissal of Defendant's counterclaims (Doc. No. 19 ("Pl. Ltr.")), Defendants' pre-motion letter (Doc. No. 22) and opposition brief (Doc. No. 25) ("Opp'n")), and Plaintiff's reply (Doc. No. 28 ("Reply")). In ruling on Defendants' motion to amend their answer, the Court has also considered Defendants' submissions in support of amendment (Doc. Nos. 36, 39) and proposed amended answer (Doc. No. 39-1) and Plaintiff's submissions opposing amendment (Doc. Nos. 37, 40).

2

apartments for impermissible purposes, such as operation of a day-care service (*id.* at ¶¶ 27, 72), and that on at least one occasion, Plaintiff forced a tenant to pay him between $100 and $200 for work that should have been performed without additional charge (*id.* at ¶ 50).  Finally, Defendants allege that Plaintiff failed to actually conduct a significant number of the building inspections that he claimed to have completed.  (*Id.* at ¶¶ 24–26, 34–36, 45–47, 51, 57–58, 66–67.)

### B. Procedural History

Plaintiff commenced this action by filing his complaint on October 30, 2015.  (Compl.) Defendants filed their answer on December 11, 2015 (Doc. No. 13) and thereafter filed their amended answer and counterclaims on January 4, 2015 (Am. Ans.).  On January 15, 2016, Plaintiff moved to dismiss these counterclaims for lack of subject matter jurisdiction and for failure to state a claim.  (Pl. Ltr.)  Defendants filed their opposition on February 11, 2016 (Opp'n), and Plaintiff submitted his reply on February 23, 2016 (Reply).

On April 22, 2016, Defendants, now represented by new counsel, requested leave to amend their answer a second time.  (Doc. No. 36.)  On April 29, 2016, the Court deemed Defendants' motion made and denied it without prejudice because Defendants failed to submit a copy of their proposed amended pleading.  (Doc. No. 38.)  However, the Court also granted Defendants leave to refile their motion and submit a copy of the proposed amended answer.  (*Id.*)  That same day, Defendants submitted a proposed Second Amended Answer.  (Doc. Nos. 39, 39-1.)  Defendants seek only two amendments:  first, they propose to add a seventeenth affirmative defense that Plaintiff was an exempt employee under the FLSA and NYLL.  (*Id.*)  Second, they wish to substitute their new counsel's name for the predecessor's firm.  (*Id.*)  Significantly, Defendants do not propose any revisions to their counterclaims.  Nevertheless, Plaintiff opposes Defendants' request for leave to amend with respect to the addition of a seventeenth affirmative defense.  (Doc.

Nos. 37, 40.)[2]  The Court will address, in turn: (1) Plaintiff's motion to dismiss Defendants' counterclaims and (2) Defendants' motion to amend their answer a second time.

## II.  PLAINTIFF'S MOTION TO DISMISS

The Court first turns to Plaintiff's motion to dismiss Defendants' counterclaims for lack of subject matter jurisdiction.  Specifically, Plaintiff argues that the counterclaims do not share a "common nucleus of operative fact permitting the Court to exercise supplemental jurisdiction over them" (Reply 3), since the counterclaims insufficiently overlap with Plaintiff's FLSA claim. The Court agrees.

On a Rule 12(b)(1) motion to dismiss, the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists.  *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In deciding a motion to dismiss a counterclaim pursuant to Rule 12(b)(1), "[t]he court must take all facts alleged in the [pleading] as true and draw all reasonable inferences in favor of [the claimant]," but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted).  Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.*

Under 28 U.S.C. § 1367(a), federal courts possess supplemental jurisdiction over state law claims only if such claims are so related to federal claims as to "form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In turn,

---

[2] Plaintiff, not surprisingly, raises no objection to Defendants' other proposed amendment that their new attorneys' names and addresses be substituted into their answer.

disputes are part of the same case or controversy when they "derive from a common nucleus of operative fact." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citation and quotation marks omitted). Supplemental jurisdiction has thus been exercised "where the facts underlying the federal and state claims substantially overlap or where presentation of the federal claim necessarily brings the facts underlying the state claim before the court." *Patel v. Baluchi's Indian Rest.*, No. 08-cv-9985 (RJS), 2009 WL 2358620, at *6 (S.D.N.Y. July 30, 2009) (quoting *McConnell v. Costigan*, No. 00-cv-4598 (SAS), 2000 WL 1716273, at *4 (S.D.N.Y. Nov. 16, 2000)).

"Satisfying the constitutional 'case' standard of subsection 1367(a), however, does not end [a district court's] inquiry." *Id.* at *4 (quoting *Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 214 (2d Cir.2004)). Rather, "[a] trial court must consider whether any of the four grounds set out in subsection 1367(c) are present to an extent that would warrant the exercise of discretion to decline assertion of supplemental jurisdiction." *Id.* As pertinent to this case, a district court has discretion to decline to exercise supplemental jurisdiction over a "claim [that] substantially predominates over the claim or claims over which the district court has original jurisdiction," 28 U.S.C. § 1367(c)(2), "whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "State claims predominate over federal claims if, after 'looking to the nature of the claims as set forth in the pleading[,] . . . the state law claims are more complex or require more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims.'" *Patel*, 2009 WL 2358620, at *5 (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab.,* 613 F.Supp.2d 437, 442–43 (S.D.N.Y.2009)). In exercising its discretion, a district court must consider "the values articulated in [*Gibbs*]: economy, convenience, fairness, and comity." *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 852 (S.D.N.Y. 2015) (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 245 (2d Cir. 2011)).

5

Here, there is no dispute that Defendants' counterclaims arise under New York state law, rather than federal law.  Nevertheless, Defendants argue that the Court may exercise supplemental jurisdiction because the facts underlying the FLSA claim substantially overlap with the facts upon which their counterclaims are premised.  Specifically, Defendants assert that they will seek to prove at trial that Plaintiff "was an exempt administrative and/or executive employee," and thus, ineligible for overtime benefits under the FLSA.  (Opp'n at 7–9); *see also* 29 U.S.C. § 213(a)(1).  Although Defendants' counterclaims sound in four different causes of action – breach of the duty of loyalty, breach of fiduciary duty, fraud, and unjust enrichment – the gravamen of each claim is the same:  namely, that Plaintiff used his managerial position to improperly enrich himself and abused Defendants' trust.  (*See* Am. Ans. ¶¶ 71–72, 78–79, 82–84, 88–89.)  Accordingly, Defendants argue that disposition of their affirmative defense and their counterclaims "will involve discovery" into and "examination of Plaintiff's work responsibilities and authority, and the work he actually performed in the service of Tryax."  (Opp'n at 2.)

The Court finds Defendants' argument unpersuasive.  To be sure, resolution of Defendants' affirmative defense "will require a fact intensive inquiry concerning Plaintiff's duties and compensation." *Chaluisan v. Sinsmetal E. LLC*, 698 F. Supp. 2d 397, 401 (S.D.N.Y. 2010) (citing 29 U.S.C. § 213(a) (1), 29 C.F.R. § 541.100); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010). ("[T]he exemption inquiry requires examination of the duties that the employee actually performs, and [] involve evidence tending to show that the plaintiffs' jobs were similar in ways material to the establishment of the exemption criteria." (citations and quotation marks omitted)).  But to prove their counterclaims, Defendants will have to establish "significantly different sets of facts" involving numerous episodes of misconduct by Plaintiff that have little to do with Plaintiff's wage and hour claim or even, for that matter, their exemption defense. *Thomas v. EONY LLC*, No. 13-cv-8512 (JPO), 2015 WL 1809085, at *6 (S.D.N.Y. Apr. 21, 2015); *see also Hernandez v. Mauzone Home Kosher Prods. of Queens, Inc.*, No. 12-cv-2327 (SJ) (JMA), 2013

WL 5460196, at *6 (E.D.N.Y. Sept. 30, 2013) (dismissing counterclaims that will require "evidence and testimony completely superfluous to [P]laintiff's straight-forward wage claims."). Indeed, Defendants' counterclaims will require them to prove: that Plaintiff coerced the superintendents to "falsify and inflate" their own invoices and perform unnecessary work; that Defendants relied on their inflated invoices; that Plaintiff in fact collected overcharges and bribes from the superintendents; and that tenants paid Plaintiff kickbacks and pressured tenants into paying for unnecessary work. (*Id.* at ¶¶ 9–14, 17–23, 27, 29–33, 39, 41–44, 50, 54, 61–64, 72, 79, 82–84, 88–89.) Although Defendants' counterclaims will require some inquiry into Plaintiff's work responsibilities and Plaintiff's actual hours worked (*id.* at ¶¶ 3–5, 8, 15–16, 24–26, 34–36, 45–47, 51, 57–58, 66–67), "the potential for some slight factual overlap" between Defendants' counterclaims and their affirmative defense, standing alone, is insufficient to "provide the necessary common nucleus of operative fact" required for the exercise of supplemental jurisdiction. *Thomas*, 2015 WL 1809085, at *6 n.5. At bottom, Defendants' assertions that Plaintiff engaged in extortion and fraud in order to enrich himself, which sound in the common-law faithless servant doctrine, breach of fiduciary duty, fraud, and unjust enrichment, "involve different rights, different interests, and," for the most part, "different underlying facts" than the straightforward wage and hour claims at issue in this case. *Bu v. Benenson*, 181 F. Supp. 2d 247, 254 (S.D.N.Y. 2001). Thus, the Court may not exercise supplemental jurisdiction over Defendants' counterclaims.

The Court, in the alternative, declines to exercise supplemental jurisdiction over Plaintiff's counterclaims pursuant to 28 U.S.C. § 1367(c)(2) for reasons similar to those set forth in the preceding paragraph. To require document production and depositions from Plaintiff's allegedly victimized subordinates and tenants regarding Plaintiff's various extortionate practices and schemes to enrich himself would unduly complicate this otherwise straightforward overtime case. *See Figurowski v. Marbil Inv'rs, LLC*, No. 14-cv-7034 (JS)(GRB), 2015 WL 4000500, at *4 n.3

(E.D.N.Y. July 1, 2015) (declining to exercise jurisdiction on this alternative basis where state-law claims would require a "substantial amount of additional evidence and involve much broader issues than Plaintiff's straightforward FLSA overtime claim"); *Thomas*, 2015 WL 1809085, at *8 (declining to exercise jurisdiction on this alternative basis where party's "attempt to litigate largely unrelated nonfederal claims in the same action . . . would result in the engrafting of a distinct, more complicated litigation onto a straightforward wage and hour case."). Accordingly, the Court finds that Defendants' state-law counterclaims would "substantially predominate[]" over Plaintiff's claims. *See Gibbs*, 383 U.S. at 726; *McConnell*, 2000 WL 1716273, at *4.

In addition, the Court finds that the "values of judicial economy, convenience, fairness, and comity" do not counsel in favor of exercising jurisdictison. To the contrary, entertaining Defendants' largely unrelated state-law claims "would plainly" make this suit "more complex," with "no indication that either judicial economy or convenience would be advanced by the Court's exercise of supplemental jurisdiction." *Fixed Income Shares*, 130 F. Supp. 3d at 853. The Court also notes that this case is in its relatively early stages, with discovery ongoing. As the parties acknowledge, most discovery relevant to Defendants' counterclaims has not yet commenced. (Doc. Nos. 42, 44.) Thus, the Court concludes that it would not be inconvenient for Defendants to file their counterclaims across the street in New York State Supreme Court. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 735 (S.D.N.Y. 2013) ("[I]n light of the early stage of the proceedings, it would not be particularly inconvenient for plaintiffs to refile their amended complaint in state court."). Furthermore, resolution of the state-law claims in state court will avoid "needless decisions of state law" by this Court, which also promotes the interests of comity and justice. *See Gibbs*, 383 U.S. at 726.

Accordingly, the Court dismisses Defendants' counterclaims pursuant to Rule 12(b)(1) without prejudice to such claims being asserted in state court. *See Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) ("[W]hen a court dismisses for lack of subject-matter jurisdiction, that

dismissal must be without prejudice."). Having dismissed Defendants' counterclaims pursuant to Rule 12(b)(1), the Court denies their Rule 12(b)(6) motion as moot.

### III. DEFENDANTS' MOTION FOR LEAVE TO AMEND

The Court next turns to Defendants' motion for leave to amend to add an additional affirmative defense. Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." As the Second Circuit has instructed, this "permissive standard . . . is consistent with our strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup, Inc.*, 698 F.3d 208, 212–13 (2d Cir. 2011)). Nonetheless, a district court may deny leave to amend for purposes such as "undue delay, bad faith, dilatory motive, and futility." *Id.*

Here, Defendants propose only one substantive amendment to their answer: namely, to add a seventeenth affirmative defense that "Plaintiff is an exempt employee under the FLSA and NYLL." (Doc. No. 39.) Plaintiff argues that Defendants' proposed amendment would be futile because it is too generally and conclusorily pleaded. However, while it is true that "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy," *Shechter v. Comptroller of N.Y.*, 79 F.3d 265, 270 (2d Cir.1996) (citation and quotation marks omitted), Defendants' answer sets forth allegations regarding Plaintiff's managerial authority (Am. Ans. ¶¶ 3–4), which are relevant to whether Plaintiff qualifies as an exempt employee under federal and state law, *see Myers*, 624 F.3d at 548–49; 29 C.F.R. § 541.100(a); 12 N.Y.C.R.R. § 142-2.2. Thus, the Court finds that Defendant has "sufficiently apprise[d] Plaintiff of the nature of the defense and provides him with adequate notice of the relevant elements." *Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 268 (S.D.N.Y. 2014). Accordingly, the Court cannot conclude at this stage of the case that the proposed affirmative

defense is "futile on its face." *Havana Club Holding, S.A. v. Galleon S.A.*, 974 F. Supp. 302, 313 (S.D.N.Y. 1997).

Plaintiff next argues that amendment should be denied because he would be unduly prejudiced by the additional discovery needed to gather relevant evidence. (Doc. No. 40.) However, Defendants already indicated their intent to raise the exemption defense months ago, both at the parties' initial conference in January and in their opposition brief submitted in connection with Plaintiff's motion to dismiss. (Opp'n 9 (arguing that Plaintiff was an "exempt administrative and/or executive employee")). In fact, Defendants represent, and Plaintiff does not contest, that their prior counsel provided Plaintiff's attorney "a detailed summary of the basis for the exemption defense and 13 exhibits supporting the position" on December 29, 2015. (Doc. No. 36 at 2.) Therefore, Defendants' proposed amendment surely "come[s] as no surprise" to Plaintiff. *Blake v. Bank of N.Y.*, No. 90-cv-4202 (JFK), 1992 WL 183632, at *7 (S.D.N.Y. July 23, 1992) (citation and quotation marks omitted); *see also Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (allowing defendant to amend answer at the summary judgment stage to add affirmative defense where "[d]efendants' untimely amendment did not unfairly surprise plaintiffs or impede the fair prosecution of their claims"). Defendants, who moved to amend shortly after retaining new counsel in this matter, appear merely to be correcting a technical oversight by their previous counsel. Furthermore, the prospect of additional discovery, standing alone, is not sufficient to justify the Court's denying leave to amend on the grounds of undue prejudice, especially where, as here, Defendant moved to amend nearly two months before the close of discovery. *See German v. Fed. Home Loan Mortg. Corp.*, No. 93-cv-6491 (RWS), 1994 WL 319154, at *2 (S.D.N.Y. June 28, 1994). Accordingly, consistent with the Second Circuit's strong preference for deciding cases on the merits, the Court grants Defendants' request for leave to amend their answer.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' counterclaims are dismissed without prejudice to such claims being asserted in state court. IT IS FURTHER ORDERED that Defendants' motion for leave to amend their answer is granted. IT IS FURTHER ORDERED that Defendants shall file their proposed amended answer no later than May 25, 2016. As set forth in the Court's order, dated April 29, 2016, the parties' deadline to complete discovery is June 20, 2016 and the Court shall conduct a post-discovery conference on July 15, 2016 at 10:00 a.m. (Doc. No. 38.) The parties have indicated, by letters to the Court, that disposition of their respective motions may impact the scope of discovery. (Doc. Nos. 42, 44.) Accordingly, IT IS FURTHER ORDERED that should either party seek to extend the deadline for completion of discovery, they must request such an extension no later than May 27, 2016 by joint letter to the Court.

SO ORDERED.

Dated:   May 23, 2016
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/16
```